**FILED**

**November 14, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-176 – *In re M.B.*

EWING, Justice, concurring:

I concur that the circuit court did not err by denying the guardian ad litem's ("GAL") motion to remove M.B. from his current foster placement. However, I find it necessary to write separately to clarify that while the GAL's motion to remove M.B. from the foster parents was filed early on in this case, the order on appeal relates to M.B.'s *permanent* placement, rather than a temporary placement, in my assessment.[1] In addition,

---

[1] There is a distinction between a "temporary placement" and a "permanent placement." *See* W. Va. Code § 49-4-601a (2020) ("When a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child."); W. Va. Code § 49-4-602(a) (2015) (relating to temporary placement with the Department of Human Services ("DHS") upon the filing of a petition) *and* (b) (relating to temporary placement with the DHS, "or a responsible person or agency found by the court to be a fit and proper person for the temporary care of the child for a period not exceeding sixty days"); *see also* W. Va. R. P. Child Abuse & Neglect Proc. 22 ("[i]f the court . . . believes at any time in the proceeding that the child is in imminent danger . . . the court may transfer custody as provided in W. Va. Code § 49-4-602 or Rule 16(c)").

Conversely, a "permanent placement" occurs when either,

(1) The petition has been dismissed and the child has been returned to the home or to a relative with no custodial supervision by the Department;

(2) The child has been placed in the permanent custody of a non-abusive parent; or

(3) A permanent out-of-home placement of the child has been achieved following entry of a final disposition order. A permanent out-of-home placement has been achieved only when the child has been adopted, placed in a legal guardianship, placed in another planned permanent living arrangement (APPLA), or emancipated[.]

W. Va. R. P. Child Abuse & Neglect Proc. 3(n).

1

I write separately to emphasize that the outcome of this appeal turns on the specific circumstances presented; namely, M.B.'s very young age, the strength of the bond he has formed with the foster parents over the course of his young life, and the foster parents' adoption of M.B.'s three biological siblings. Based on those factors, I cannot find the circuit court abused its discretion when it found that M.B.'s best interests require that he remain with the foster parents.

M.B. was placed with the foster parents immediately following his birth in May 2023. M.B.'s three biological siblings had been placed with the foster parents since 2020, in the course of a separate abuse and neglect proceeding in Greenbrier County. In September 2023, the GAL moved the circuit court to remove M.B. from the foster parents. The circuit court conducted a hearing shortly after the GAL filed the motion to remove M.B. from the foster parents. There, the GAL explained that she moved the circuit to remove M.B. from the foster parents because (1) she had learned that the foster mother had been breastfeeding M.B., and (2) she did not "believe that [the fosters' home] is appropriate for [M.B.] as a permanent placement." In other words, the GAL acted upon an immediate concern and a future one, i.e., whether it would serve M.B.'s best interests to allow the then-current placement with the foster family to develop into the child's permanent placement.

Importantly, in the order entered following that hearing, the circuit court ordered the foster mother to cease breastfeeding M.B. (the immediate concern) while also ordering the DHS to explain whether it considered the foster parents to be an option for

2

permanent placement (the future concern).[2]  The circuit court also appointed a special commissioner to inquire as to the appropriateness of the foster family as a placement for M.B.  The DHS supplied the court with a memorandum in November 2023, in which it opined "that the current foster placement is a permanent placement for" M.B.  The GAL responded, stating that "the current foster home is not appropriate as a long[-]term placement," and "that [M.B.] needs to be moved as soon as possible in order for him to bond with a new foster/adoptive placement."  Later, the special commissioner filed a report with the circuit court wherein the commissioner recommended that M.B. be removed from the foster parents and "placed in a prospective adoptive placement," that the child "be separated from all other siblings . . . for purposes of his permanent placement."  The circuit court terminated the parental rights of M.B.'s mother and father by order entered on January 8, 2024.

The circuit court conducted a second hearing on the GAL's motion on January 31, 2024.  There, the foster father testified that he and his wife hoped to adopt M.B. and his siblings.  The special commissioner argued that placing a child "not born to them in an [Amish] adoptive home might be unfairly restrictive to that child."  The circuit

---

[2] West Virginia Code § 49-4-608(b) outlines permanent placement options.  These include placement of the "child in an adoptive home," "with a natural parent," "in legal guardianship," or a "permanent[] place[ment] . . . with a fit and willing relative . . . ."  Section 49-4-608(e) also provides that following the requisite permanency hearing, "the court shall, in accordance with the best interests of the child, enter an order containing all the appropriate findings."

court entered an order on February 29, 2024, wherein it considered M.B.'s best interests,[3] denied the GAL's motion to remove M.B. from the foster parents, and ordered the DHS to staff M.B.'s case for adoption. The following month, during a placement review hearing, the circuit court stayed "the finalization of the potential adoption" pending the GAL's appeal of the February 29, 2024, order to this Court.

The procedure in the circuit court demonstrates that, breastfeeding incident aside, the GAL's objection to M.B.'s placement with the foster parents was about their suitability as a permanent placement for M.B.[4] The briefing and hearing testimony reinforce that conclusion and demonstrate that, while the GAL may have couched her motion in terms of immediate removal, the issue ultimately addressed by the circuit court and under review by this Court is permanency. It matters not that the GAL attempted to bring her concern to the circuit court early on in these proceedings. *See In re G.G.*, 249 W. Va. 496, 506, 896 S.E.2d 662, 672 (2023) ("The decision regarding G.G.'s permanent placement had to be made based upon the circumstances existing at that time, not when the petitioners contend that they first sought custody of G.G."). Time passes; cases progress to disposition and (in some circumstances) termination of parental rights; and the inquiry

---

[3] The circuit court referred to the "best interest" standard set forth in West Virginia Code § 48-9-102 (2022). Per the plain language of section 48-9-102, that standard is to be used in custody proceedings under Article 9 of the Chapter 48 and not abuse and neglect proceedings under West Virginia Code §§ 49-4-601 to -610.

[4] While I disagree with the GAL that it would not serve M.B.'s best interest to remain with the foster parents, I commend her willingness to advocate on M.B.'s behalf.

necessarily becomes one of permanency. *See* W. Va. Code §§ 49-4-110(c) (2015) ("For each child . . . who continues to remain in foster case, the circuit court shall conduct a permanency hearing no later than twelve months after the date the child . . . is considered to have entered foster care . . . ."); 49-4-608(b) (2023) ("If 12 months after receipt by the department or its authorized agent of physical care, custody, and control of a child either by a court-ordered placement or by a voluntary agreement the department has not placed a child in an adoptive home, placed the child with a natural parent, placed the child in legal guardianship, or permanently placed the child with a fit and willing relative, the court shall hold a permanency hearing."); W. Va. R. P. for Child Abuse & Neglect Proc. 43 ("Permanent placement of each child shall be achieved within twelve (12) months of the final disposition order, unless the court specifically finds on the record extraordinary reasons sufficient to justify the delay."). Here, the circuit court terminated M.B.'s parents' parental rights in January 2024. At that point, the court's attention properly turned to M.B.'s permanent placement.

In my view, it is very important to the resolution of this appeal that the order under review determines M.B.'s *permanent* placement rather than changing the child's placement prior to disposition. First, I question whether an order granting or denying a motion to change a temporary placement is a final, appealable order over which this Court may exercise jurisdiction. Cases cited by my learned colleagues came to this Court on appeal of a circuit court's order determining a child's permanent placement. In *In re M.M.*, this Court affirmed the circuit court's order permanently placing the child with the child's

5

maternal aunt, rather than the child's long-term foster parents. *Id.*, 251 W. Va. 74, ___, 909 S.E.2d 109, 111 (2024). In *In re G.G.*, this Court affirmed the circuit court's order permanently placing the child with the child's long-term foster parents, rather than the child's maternal aunt and uncle. *Id.*, 249 W. Va. at 499, 896 S.E.2d at 665. And in *In re R.S.*, this Court reversed and remanded the circuit court's order permanently placing the child with one set of foster parents over another. *Id.*, 244 W. Va. 564, 567, 855 S.E.2d 355, 358 (2021). Notably, in *State ex rel. D.B. v. Bedell*, when non-intervenor foster parents sought to challenge an order awarding temporary custody of a child to his maternal grandparents, the foster parents did so—successfully—by petitioning for extraordinary relief. *Id.*, 246 W. Va. 570, 575, 874 S.E.2d 682, 687 (2022).

Second, a circuit "court has exclusive jurisdiction to determine the permanent placement of a child," W. Va. R. P. Child Abuse & Neglect Proc. 36(e),[5] and the court exercises that authority in the child's best interest. *See In re G.G.*, 249 W. Va. at 507, 896 S.E.2d at 673, Syl. Pt. 9 (2023) ("'[I]n a contest involving the custody of an infant where there is no biological parent involved, the best interests of the child are the polar star by which the discretion of the court will be guided.'") (quoting Syl. Pt. 1, in part, *State ex rel. Treadway v. McCoy*, 189 W. Va. 210, 429 S.E.2d 492 (1993)); *Napoleon S. v. Walker*, 217

---

[5] Indeed, the circuit court's exclusive jurisdiction to determine the permanent placement of a child does not end with the child's adoption. *See* W. Va. Code § 49-4-606(b) ("If the child is removed or relinquished from an adoptive home or other permanent placement after the case has been dismissed, any party with notice thereof and the receiving agency shall promptly report the matter to the circuit court of origin . . . and the court shall schedule a permanency hearing within sixty days of the report to the circuit court . . . ."); *see also* W. Va. R. P. Child Abuse & Neglect Proc. 45(b).

W. Va. 254, 259, 617 S.E.2d 801, 806 (2005) ("A fundamental mandate, recognized consistently by this Court, is that the ultimate determination of child placement must be premised upon an analysis of the best interests of the child."). At permanency, that best-interest determination cannot be limited to an assessment of the child's current situation; the circuit court must consider how the permanency decision may impact the child's future growth and development. *See, e.g.*, *In re G.G.*, 249 W. Va. at 504, 896 S.E.2d at 670 (recognizing that "significant bonds are formed between a child and his or her caregivers at this young age, and, critically, any disruption of those bonds *has the potential to severely impact the child's growth and development*") (emphasis added). To put a finer point on things, the question before the court at the permanency stage of an abuse and neglect proceedings is whether a certain placement will "achieve [a] safe, stable, secure permanent home[] for" the child. W. Va. R. P. Child Abuse & Neglect Proc. 2.

When viewed through that lens, permanency with the foster parents clearly serves M.B.'s best interests even though M.B.'s future with them will not mirror the lives of the vast majority of his peers. M.B. was less than one-year old when the circuit court denied the GAL's motion, and this Court has recognized that "'continuity of relationships, surroundings and environmental influence' during a child's first three years of life is vitally important . . . ." *In re G.G.*, 249 W. Va. at 505, 896 S.E.2d at 671 (quoting *In re K.E.*, 240 W. Va. 220, 227, 809 S.E.2d 531, 538 (2018)).[6] The child has formed strong bonds with

---

[6] M.B. had been in foster care for less than eighteen months when the circuit court ruled on the GAL's motion. However, M.B. has *now* been in foster care with the foster parents for more than eighteen months. West Virginia Code § 49-4-111(b) (2015) places

7

the foster parents, and the foster parents have adopted M.B.'s three biological siblings. The circuit court rightly declined to limit its consideration of M.B.'s best interests to one or two factors, divorced from the ultimate goal at this late stage of M.B.'s case: a safe, stable, secure permanent home for the child. Accordingly, for the reasons discussed above, I respectfully concur.

---

limitations on the reasons for which the care arrangement may be terminated after a child has been placed in a foster care arrangement for more than eighteen months. Section 49-4-111(d) also affords priority to foster and/or adoptive parents who foster and/or adopt the minor child's siblings.